**John R. PRAGER, Plaintiff-Appellant,**

v.

**Donald P. HODEL, Secretary of the Department of the Interior, et al., Defendants-Appellees.**

No. 85–1060.

United States Court of Appeals, Fifth Circuit.

July 9, 1986.

Rehearing Denied Aug. 6, 1986.

John R. Prager, pro se.

Albert M. Ferlo, Jr., Dirk D. Snel, Attys., Dept. of Justice, Land and Nat. Resources

Div., Appellate Section, Washington, D.C., for defendants-appellees.

Before RUBIN, POLITZ and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

John R. Prager, a resident of Bastrop County, Texas, petitioned the Secretary of the Interior in an effort to designate the Camp Swift Military Reservation ("Camp Swift") in Bastrop County unsuitable for surface coal mining. *See* 30 U.S.C. § 1272. Prager filed his petition pursuant to the terms of the Surface Mining Control and Reclamation Act of 1977 (the "Act"). 30 U.S.C. §§ 1201–1328, which provides that areas shall be, upon petition, designated as unsuitable for surface coal mining if the regulatory authority determines that reclamation "is not technologically and economically feasible." 30 U.S.C. § 1272(a)(2). After conducting extensive study, the Secretary of the Interior, acting through the Director of the Office of Surface Mining Reclamation and Enforcement ("OSM"), declined to designate the Camp Swift area as unsuitable under section 1272. Prager brought an action in federal district court seeking review of the Secretary's decision. *See* 30 U.S.C. § 1276. The district court rejected Prager's challenge. On appeal, Prager contends that the Secretary acted arbitrarily and capriciously in his decision by failing to adequately consider the "economic feasibility" of reclamation of the Camp Swift area. After reviewing the administrative record presented to the Secretary, this Court finds that the Secretary adequately considered economic feasibility in the context of an unsuitability determination. Accordingly, we reject Prager's challenge and affirm the judgment of the district court.

A brief overview of the Act and regulations is necessary to present the instant case in the proper context. The Act provides a plan for assuring that surface coal mining will be conducted in such a manner to minimize the adverse impact of coal mining while assuring the nation an adequate supply of coal. *See* 30 U.S.C. § 1201. Consequently, the Act provides for standards governing the performance of surface coal mining operations and the reclamation of lands upon which operations are conducted.[1] Before any mining operation can take place, the proposed operator must submit a permit application and a reclamation plan which satisfies the requirements of the Act and the regulations promulgated under the Act.

Thus, the Act imposes environmental standards on surface coal mining and assures compliance with these standards through the permit application process. In addition to this mechanism, Congress also provided a process whereby a citizen may petition to have an entire area designated as unsuitable for all or certain types of surface coal mining operations. 30 U.S.C. § 1272(c). The Act states that the Secretary "shall designate an area as unsuitable for all or certain types of surface coal mining operations if the ... regulatory authority determines that reclamation pursuant to the requirements of this [Act] is not technologically and economically feasible." 30 U.S.C. § 1272(a)(2). Further, a surface area may be designated unsuitable for certain types of surface coal mining operations if such operations will

(A) be incompatible with existing State or local land use plans or programs; or

(B) affect fragile or historic lands in which such operations could result in sig-

---

**1.** The standards mandated by the Act with which the operator must comply include requirements that surface coal mine operators restore disturbed land to its approximate original contour, stabilize and protect all surface areas to prevent slides, erosion and water pollution, restore topsoil removed during surface coal mining operations to assure revegetation of the land in accordance with the requirements of the Act, use the best technology currently available to prevent damage to fish and wildlife, avoid acid or toxic mine drainage into the prevailing water systems, and minimize disturbance to the prevailing hydrologic balance. 30 U.S.C. § 1265.

nificant damage to important historic, cultural, scientific, and esthetic values and natural systems; or

(C) affect renewable resource lands in which such operations could result in a substantial loss or reduction of long-range productivity of water supply or of food or fiber products, and such lands to include aquifers and aquifer recharge areas; or

(D) affect natural hazard lands in which such operations could substantially endanger life and property, such lands to include areas subject to frequent flooding and areas of unstable geology.

30 U.S.C. § 1272(a)(3).

In enacting the unsuitability designation process, Congress noted "that the designation process is structured to be applied on an area basis, rather than a site by site determination which presents issues more appropriately addressed in the permit application process." H.Rep. No. 95–218, 95th Cong., 1st Sess. 95 (1977), U.S.Code Cong. & Admin.News 1977, pp. 593, 631. Moreover, Congress emphasized that this "section does not require the designation of areas as unsuitable for surface mining other than where it is demonstrated that reclamation of an area is not physically or economically feasible under the standards of the act." Id. at 94, U.S.Code Cong. & Admin.News 1977, p. 630. In keeping with this general nature of the unsuitability process, the regulations promulgated pursuant to the Act provide that the unsuitability process is legislative, rather than adjudicatory, in nature. See 44 Fed.Reg. 15,003–04 (1979) (discussing legislative nature of unsuitability determination under regulations); Utah International, Inc. v. Department of the Interior, 553 F.Supp. 872, 880 (D.Utah 1982). See generally Van Buskirk & Dragoo, The Designation of Coal Lands as "Unsuitable" for Surface Coal Mining Operations, 27A Rocky Mtn.Min.L.Inst. 339 (1982); Gorrell & Russell, The Petition Process for Designating Lands Unsuitable for Surface Coal Mining Operations: Extreme Solution or Unnecessary Exercise, 71 Ky.L.J. 57 (1982); Note, Designating Areas Unsuitable for Surface Coal Mining, 1978 Utah L.Rev. 321.[2]

Having set the statutory and regulatory context, we turn now to the proceedings leading to the instant appeal. Prager filed his unsuitability petition with the Office of Surface Mining Reclamation and Enforcement on August 3, 1981, and filed an amended petition on October 13, 1981. The petition as amended covered approximately 9,475 acres on the Camp Swift Military Reservation. Prager based his petition on six grounds: 1) that mining would have an adverse effect on the area's water supply; 2) that the soil in the area would not support reclamation efforts; 3) that the area constituted a suitable habitat for the Houston toad, an endangered species; 4) that mining would increase flooding hazards and erosion; 5) that the area contained at least 1,000 acres of prime farmland; and 6) that at least five cemeteries were located in the area.

In response to Prager's petition, the Secretary compiled an extensive record containing technical reports concerning the allegations in Prager's petition. The Secretary's consultations extended to include economists as well as study regarding the hydrologic impact of surface coal mining in

---

**2.** In accordance with the legislative and land-use planning nature of the unsuitability petition process, OSM determined that no party should bear the burden of proof in the unsuitability determination process. 30 C.F.R. § 769.14(d) (1982). Some commentators have criticized the failure of the regulations to place a burden of proof on the petitioner. See Van Buskirk & Dragoo, supra, at 391; Gorrell & Russell, supra, at 71–72. Van Buskirk and Dragoo, in particular, feel that the failure to place a burden of proof will result in problems where the data on a particular issue are lacking, nonconclusive, or conflicting. The validity of the regulations, however, is not questioned on this appeal. See generally In re Permanent Surface Mining Regulation Litigation, 620 F.Supp. 1519, 1538–59 (D.D.C.1985). Moreover, Prager does not contend that the Secretary improperly placed the burden of proof on him on appeal. Rather, Prager asserts that the Secretary failed to adequately consider the issue of economic feasibility in accordance with the scheme of the Act, we need not address the situation suggested by the commentators when there is an inadequate consideration of economic factors.

the area. The Secretary addressed each of the issues contained in Prager's petition. The Secretary's study was summarized, after a public hearing and extensive commentary from the petitioner Prager and other concerned citizens and organizations, in the final draft of the Petition Evaluation Document ("PED"). This document discussed the potential problems of surface coal mining in the area and the methods which were feasible in assuring reclamation pursuant to the requirements of the Act following any surface coal mining.[3]

Based on the extensive evidence presented, the Secretary, acting through OSM Director James Harris, declined to designate the Camp Swift area as unsuitable for surface coal mining. Director Harris summarized his decision:

> I decline to designate all, or any parts, of the Camp Swift petition area as unsuitable for either surface or underground coal mining. I find that there is insufficient evidence to demonstrate that, as the petitioners allege, reclamation of surface coal mining operations in the petition area, pursuant to the requirements of SMCRA, is not technologically and economically feasible. I also find that there is insufficient evidence to demonstrate that, as the petitioners further allege, surface coal mining operations within the petition area could result in a substantial loss of or reduction in long-range productivity of water supplies or of food or fiber products.

Prager thereafter filed a pro se complaint in federal district court, seeking judicial review of the Secretary's decision pursuant to 30 U.S.C. § 1276. After considering summary judgment motions filed by both parties, the district court, noting that "the record contains a great deal of evidentiary support for the Secretary's findings and shows a consideration of all relevant factors," granted summary judgment for the Secretary. Prager then filed the instant appeal.

■ In reviewing the Secretary's decision, this Court must determine whether the Secretary acted arbitrarily and capriciously in his determination. *See* 30 U.S.C. § 1276(a)(1).[4] The arbitrary and capricious standard requires the reviewing court to make a searching and careful inquiry into the facts before the agency and to consider whether the action taken "was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971). The reviewing court is not "empowered to substitute its judgment for that of the agency." *Id.* Recently, the Supreme Court stated:

> Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency or is so implausible that it could not be ascribed to a difference in view or the product of agency

---

**3.** As noted, the PED considers each of the allegations raised in Prager's petition. With regard to the effect on the hydrologic balance from surface coal mining, the PED details possible impacts. The PED notes in detail that there would be no reduction in yield from an aquifer in the area and that technology (such as reconstruction of the near-surface soil system, use of water impoundments, burial of acid-producing soil, and revegetation) is available in order to prevent material damage to the water balance. The PED also includes an economic forecast concerning the supply and demand for coal from the Camp Swift area and concludes that "there is a relatively strong market for the petition area coal in 1995." The PED also discusses

Prager's petition concern that cultural and historic resources would be threatened by the disruption of cemeteries in the petition area and concludes that any effect would be minimal by avoiding the areas or by moving the cemeteries in accordance with Texas law. With regard to the endangered species, the Houston toad, the PED notes that a survey of the petition area found no Houston toads and that mitigating measures, such as creating small ponds, could be employed to preserve the species' habitat.

**4.** The parties agree that the arbitrary and capricious standard applies in review of the Secretary's decision.

expertise. *Motor Vehicle Manufacturers Assn. v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

On appeal, Prager fully concedes that the Secretary did not act arbitrarily or capriciously in determining that reclamation pursuant to the terms of the Act is technologically feasible. Rather, Prager contends that the Secretary acted arbitrarily and capriciously in determining that reclamation pursuant to the Act was not economically infeasible. Prager contends that there is insufficient evidence to indicate that the Secretary considered the economic feasibility of the various reclamation methods proposed.

On this review of the Secretary's unsuitability determination, this Court cannot agree with Prager's contention that the Secretary acted arbitrarily and capriciously with regard to economic feasibility. Rather, the PED repeatedly refers to reclamation technologies which have been employed in other surface coal mining operations, thus indicating the economic feasibility of such approaches. The PED also indicates that the Secretary was sensitive to the costs of the reclamation methods in that the Secretary noted that one method of revegetation was cost prohibitive. Prager particularly complains that the Secretary acted arbitrarily in the Secretary's observation that the ultimate economic feasibility of the reclamation technology would have to be considered by the operator when confronted with the requirements of the Act at the mine permit stage. However, as had been noted, one purpose of the unsuitability process is to address the feasibility of reclamation on an area basis. In light of this purpose of the unsuitability process and the present record, we cannot agree with Prager's contention that the Secretary wholly abandoned the issue of economic feasibility in making this observation. In the context of the unsuitability determination, then, it cannot be said that the Secretary acted arbitrarily and capriciously in declining to designate the Camp Swift area as unsuitable for surface coal mining.[5]

Accordingly, the judgment of the district court is

AFFIRMED.

---

5. We note the limited nature of this appeal and the proceedings before the agency. The Secretary's determination does not approve actual surface mining in the Camp Swift area. Indeed, the regulations seek to prevent the unsuitability determination from being converted into a "suitability" determination. *See* 44 Fed.Reg. 15,001 (1979). We also note that the current regulations provide for a second petition on federal lands when the second petition presents significant new allegations of facts. *See* 30 C.F.R. § 769.14(a)(2)(B) (1985).