**ENSERCH EXPLORATION, INC., as Managing General Partner of EP Operating Company, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

**No. 88–4066.**

United States Court of Appeals, Fifth Circuit.

Oct. 30, 1989.

---

Kevin M. Sweeney, George C. Garikes, Washington, D.C., for Enserch Exploration.

Jerome Feit, Sol., F.E.R.C., Robert H. Solomon, Washington, D.C., for F.E.R.C.

E.R. Island, David L. Huard, Los Angeles, Cal., for Southern California Gas Co.

Steve Hunnicutt, Houston, Tex., for Texas Eastern Transmission Corp.

Michael J. Manning, Washington, D.C., for Delhi Gas Pipeline Corp.

Douglas F. John, Julie Simon, Washington, D.C., for Travis Peak Producers Group.

Before CLARK, Chief Judge, BROWN and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Enserch Exploration, Inc. petitions for review of the Commission's order remanding a tight formation designation to the Texas Railroad Commission and of the Commission's order reopening seventy-five individual tight formation well determinations. For the reasons cited herein, we affirm the remand order but dismiss the petition for review of the reopening order for lack of jurisdiction.

## I. FACTS AND PROCEDURAL HISTORY

The Natural Gas Policy Act authorizes the Federal Energy Regulatory Commission (hereinafter Commission) to prescribe incentive prices for certain categories of natural gas that are produced under conditions which "present extraordinary risks or costs." 15 U.S.C. § 3317. Among those categories is gas produced from a tight formation.[1] A producer operating in a field that has been designated as a tight formation may be entitled to higher incentive prices for gas produced from that field.

Section 503 of the Natural Gas Policy Act (hereinafter NGPA) provides the contemporary statutory framework for the identification and designation of gas entitled to incentive pricing. A four step process is involved. First, the local regulatory authority[2] recommends that a field be designated as a tight formation. Second, the Commission may affirm, reverse, remand, issue a preliminary finding or simply take no action on the local authority's recommendation. If the Commission takes no action, the local authority's recommendation becomes final forty-five days after receipt of the recommendation by the Commission. If the Commission issues preliminary findings but fails to take further action, the local authority's recommendation becomes final one hundred twenty days after the date the Commission's preliminary finding was issued. In step three, an interested producer may petition the local regulatory authority to recommend that a particular well within the designated tight formation be classified as a tight formation well. If the local regulatory authority agrees, it recommends to the Commission that the particular well be classified as a tight formation well. Fourth, the Commission may affirm, reverse, remand, issue a preliminary finding, or simply take no action on the local authority's recommendation. As in step two, the local authority's

---

1. A tight formation is a sedimentary layer of rock cemented together in such a manner so as to restrict or impede the flow of gas through the rock.

2. Section 503 of the NGPA defines the local regulatory authority as the "[f]ederal or [s]tate agency having regulatory jurisdiction with respect to the production of natural gas." 15 U.S.C. § 3413(c)(1).

individual tight formation well recommendation becomes final in forty-five days from the date the Commission receives the recommendation unless the Commission has issued a preliminary finding. In the event that the Commission has issued a preliminary finding, the Commission has one hundred twenty days from the date the preliminary finding was issued in which to take further action before the local authority's recommendation becomes final. *See Ecee, Inc. v. FERC,* 645 F.2d 339, 345–53 (5th Cir.1981) (discussing the statutory divisions of responsibilities between the Commission and the local regulatory authority).

The Commission is obligated to reverse the local regulatory authority's determination if "[the Commission] makes a finding that such determination is not supported by substantial evidence in the record upon which such determination was made." 15 U.S.C. § 3413(b)(1). Absent such a finding, the Commission may remand to the local regulatory authority if

(A) the Commission finds that a State or Federal agency determination is not consistent with information contained in the public records of the Commission, and which is not part of the record upon which such determination was made; and

(B) such preliminary finding and notice thereof ... is made within 45 days after the date on which the Commission received notice of such determination ... and the final such finding is made within 120 days after the date of the preliminary finding.

*Id.* § 3413(b)(2). Once final, the determination is binding unless:

(A) if in making such determination the Commission or such Federal or State agency relied on any untrue statement of a material fact; or

(B) if there was omitted a statement of material fact necessary in order to make the statements made not misleading, in light of the circumstance under which they were made, to the Federal or State agency in making such final determination or to the Commission in reviewing such determination.

*Id.* § 3413(d)(1).

Prior to *Williston Basin Interstate Pipeline Co. v. FERC,* 816 F.2d 777 (D.C. Cir.1987), *cert. denied,* 484 U.S. 1025, 108 S.Ct. 748, 98 L.Ed.2d 761 (1988), the Commission conducted its review of local authority tight formation recommendations pursuant to § 501 of the NGPA rather than § 503. Under § 501, the Commission's review of a tight formation recommendation was made under the Commission's rulemaking authority.[3] At the time the instant proceedings began, the Commission, operating under its § 501 rulemaking authority, received such a recommendation from the Texas Railroad Commission regarding the Travis Peak Field.[4] Upon review of the data submitted by the Texas Railroad Commission in support of the Travis Peak recommendation, the Commission advised the Texas Railroad Commission that the data did not appear to satisfy the prescribed permeability and flow rate guidelines.[5] Thereafter, the Texas Railroad Commission

3. Section 501 authorizes the Commission to engage in any activity, up to and including the promulgation of rules, that it considers necessary to fulfill its obligations under the NGPA. 15 U.S.C. § 3411. Pursuant to this grant of rulemaking authority, the Commission deemed a local regulatory authority's designation of a tight field as a "recommendation." The Commission, after receiving such a recommendation, would publish a notice of proposed rulemaking in the Federal Register, review comments, institute a public hearing, and on the basis of all information gleaned therefrom, approve, deny or modify the jurisdictional agency's recommendation. In *Williston Basin Interstate Pipeline Co. v. FERC,* 816 F.2d 777, the D.C. Circuit held that the Commission must act exclusively within the confines of § 503 of the

NGPA in reviewing all future tight formation recommendations. Thus, the Commission, after Williston Basin, was not free to employ its rulemaking authority in the designation of tight formations.

4. The Travis Peak Field lies under several contiguous counties in northeast Texas.

5. The Railroad Commission's findings were based on the geometric mean average whereas the Commission was accustomed to employing the arithmetic averaging method. *See generally,* S.A. Holditch, R.M. Robinson and W.S. Whitehead, "The Analysis of Complex Travis Peak Reservoirs in East Texas" SPE/DOE 16427 at 10–11.

tendered an amended recommendation. As with the first recommendation, the amended recommendation did not meet with the Commission's approval; informal meetings were therefore held in order to resolve the problem. Eventually, on May 23, 1986, the Commission issued Order No. 450 which designated most, but not all, of the Travis Peak Field as a tight formation.[6]

Less than a month later, on June 19, 1986, Delhi Gas Pipeline Corporation (hereinafter Delhi) filed a petition for rehearing of Order No. 450. In support thereof, Delhi argued that the data submitted to the Commission regarding the tight field qualities of the Travis Peak Field were unrepresentative of the Field and were outdated at the time of submission. In further support of its contentions, Delhi submitted two documents. One represented an analysis of fifty-three Travis Peak wells completed after 1980 that reportedly failed to meet tight formation standards. The other was a 1986 report conducted by the Gas Research Institute demonstrating that average permeability in the Travis Peak Field exceeded permissible levels.

Approximately six months after Delhi's June 19, 1986 petition for rehearing of Order No. 450, the Commission, on January 9, 1987, granted the petition for rehearing, vacated Order No. 450, and reopened the record. The parties to the reopened rulemaking proceeding held several prehearing conferences which addressed such topics as whether the seventy-five individual Travis Peak tight well determinations would be affected by the outcome of the hearing. Before that and other issues were resolved, however, the Commission cancelled the hearing as a result of the D.C. Circuit's decision in *Williston Basin Interstate Pipeline Co. v. FERC* which effectively stripped the Commission of its § 501 rulemaking authority.[7] After Williston was decided, the Commission, proceeding under § 503, could pursue five avenues with respect to the Texas Railroad Commission's recommendation that the Travis Peak Field qualify as a tight formation: the Commission could affirm, reverse, remand, issue a preliminary finding, or simply take no action on that recommendation.[8] Accordingly, the Commission issued a "notice of preliminary finding" to remand the designation of the Travis Peak Field as a tight

**6.** Order No. 450 finally became effective on June 23, 1986—some four and one half years after the Texas Railroad Commission's first recommendation to the Commission on November 2, 1981 that the Travis Peak Field qualify as a tight formation. After Order No. 450 was placed in effect, several Travis Peak operators filed applications with the Texas Railroad Commission to secure individual tight formation well determinations for certain Travis Peak wells already completed. The Texas Railroad Commission approved the individual well applications and forwarded its findings to the Commission. Because the Commission took no action to reverse or remand the individual tight well determinations of the Texas Railroad Commission with respect to the seventy-five wells at issue in the instant case, the determinations became final under § 503.

**7.** The Commission, responding to *Williston Basin*, issued on July 29, 1987, Order No. 479 which announced that the Commission would henceforth make tight formation determinations under § 503 rather than § 501. Order No. 479 became effective on August 20, 1987.

**8.** After the *Williston Basin* mandate issued on July 15, 1987, the Commission was faced with the decision of whether to apply the Court's

mandate prospectively or retrospectively. It decided that a prospective application was the better course. The significance of the Commission's decision in that regard is as follows. As a result of the Commission's January 9, 1987, vacation of Order No. 450, the Texas Railroad Commission's original tight formation designation of the Travis Peak Field which was dated November 2, 1981 was essentially resurrected as an outstanding recommendation. In other words, it was as if the Commission had never acted on that original Texas Railroad Commission designation. As mentioned earlier, *Williston Basin* compelled the Commission to operate under the provisions of § 503. If the Commission had applied the *Williston Basin* mandate *retrospectively*, it would have had to use November 2, 1981 as the operative date for § 503 purposes, and thus would have been unable to remand the Travis Peak tight formation designation to the Texas Railroad Commission since the 45 and 120 day deadlines of § 503(b)(2)(B) would have long since expired. By applying *Williston Basin prospectively*, however, the Commission could use the date that the *Williston Basin* mandate issued—July 15, 1987—as the operative date, thereby allowing the Commission sufficient time in which to issue a preliminary remand order which satisfied the the 45 and 120 day deadlines of 503(b)(2)(B).

formation to the Texas Railroad Commission. *Texas Railroad Commission, Travis Peak Formation,* 40 FERC ¶ 61,100 (July 29, 1987).

In support of its decision to remand, the Commission noted that the information provided to it by Delhi was inconsistent with the Texas Railroad Commission's designation of the Travis Peak Field as a tight formation.[9] Moreover, the Commission stressed that the new information provided by Delhi had not been a part of the record upon which the Texas Railroad Commission had made its original designation. *See* "Final Order Remanding Jurisdictional Agency Determination," *Texas Railroad Commission, Travis Peak Formation,* 41 FERC ¶ 61,213, 61,580–81 (1987) ("the data submitted by Delhi raise legitimate doubts as to whether Travis Peak qualifies as a tight formation under the applicable standards of the Commission's regulations"). Thereafter, the Commission, on November 25, 1987, issued an "Order Reopening Final Well Category Determinations." The Commission, relying on its reopening authority under § 503(d)(1)(A), concluded that the seventy-five individual tight field well determinations of the Texas Railroad Commission had rested on an "untrue statement of fact," namely, the Commission's *own* earlier designation of the Travis Peak Field as a tight formation.

On January 25, 1988, the Commission dismissed all requests for rehearing of the remand order. *Texas Railroad Commission, Travis Peak Formation,* 42 FERC ¶ 61,074 (1988). Likewise, on January 25, 1988, the Commission dismissed requests for rehearing of the "Order Reopening Final Well Category Determinations." *Id.* at

¶ 61,075. Thereafter, Enserch Exploration (hereinafter petitioner), petitioned this Court for review of the Commission's orders denying rehearing of the remand and reopening orders.

## II. DISCUSSION

There are two issues presented by the instant case. The first issue is whether the Commission acted arbitrarily and capriciously in remanding the Travis Peak Field tight formation determination to the Texas Railroad Commission. The second issue is whether the Commission exceeded its authority under the NGPA by reopening the seventy-five Travis Peak individual tight formation well determinations. For the following reasons, we affirm the Commission's remand to the Texas Railroad Commission of the Travis Peak tight formation recommendation. As to the second issue, we conclude that because the order reopening the seventy-five individual well determinations is not reviewable under the NGPA and governing precedential authority, this Court lacks jurisdiction to consider the merits of the petitioner's claims in that regard.

■ We review the Commission's order remanding the Travis Peak Field tight formation determination to the Texas Railroad Commission under a statutorily provided arbitrary and capricious standard. 15 U.S.C. § 3413(b)(4)(A). In that undertaking, we consider whether the action taken by the Commission was "based on a consideration of the relevant factors" and "whether there has been a clear error of judgment." *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814,

---

**9.** The Commission seemed to recognize the protracted nature of the proceedings in the instant case. In an apparent attempt to reconcile the need to resolve the issue once and for all with the need to properly consider the newly submitted controversial data, the Commission stated:

Tight formation recommendations have historically been expeditiously reviewed and for the most part approved by the Commission. However, in this case, the Commission had difficulty with the Travis Peak recommendation from the beginning. Delays were caused by various factors including review of the

original recommendation and the conclusion that the recommendation did not meet Commission guidelines, submittal of a revised proposal by Texas, meetings with Texas personnel concerning the revised recommendation, acquisition of the well code data from TXO, issuance of Order No. 450, vacation of Order No. 450, and issuance of the notice of preliminary determination.

"Final Order Remanding Jurisdictional Agency Determination," *Texas Railroad Commission, Travis Peak Formation,* 41 FERC ¶ 61,213 (1987).

28 L.Ed.2d 136 (1971); *Prager v. Hodel,* 793 F.2d 730, 733 (5th Cir.), *cert. denied,* 479 U.S. 988, 107 S.Ct. 581, 93 L.Ed.2d 584 (1986). *See also Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (courts are to pay deference to an agency's construction of a statute with which the agency is charged with administering unless that construction is arbitrary, capricious, or manifestly contrary to the statute). An agency determination is considered arbitrary and capricious if the agency has 1) "entirely failed to consider an important aspect of the problem," or 2) "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). It is in light of the foregoing standards that we review the Commission's remand order.

Section 503(b) of the NGPA gives the Commission the discretion to remand to the local regulatory authority any tight formation designation provided that 1) "the Commission finds that a State or Federal agency determination is not consistent with information contained in the public records of the Commission;" 2) that information "is not part of the record upon which such determination was made;" and 3) the Commission issues a preliminary remand order within forty-five days of the date it received notice of the determination and issues a final remand order within 120 days of the date of the preliminary order. 15 U.S.C. § 3413(b)(2). The petitioner in this case does not argue that the foregoing requirements (2) and (3) were not met. Rather, the petitioner contends that the Commission acted arbitrarily and capriciously in finding that Delhi's newly submitted information regarding the Travis Peak Field was inconsistent with the Texas Railroad Commission's determination that the Field was a tight formation. Accordingly, the scope of our review narrows to a consideration of whether the first require-

ment of section 503 as set forth above was met.

The nature of Delhi's newly supplied information belies the petitioner's contention that the Commission erred in concluding that the new information was inconsistent with the designation of Travis Peak Field as a tight formation. Contained in the new information were data which indicated that at least fifty-three wells produced in the Travis Peak formation after 1980 did not meet the Commission's tight formation standards. Additionally, as part of Delhi's new information, the Commission was given a 1986 report by the Gas Research Institute which indicated that average permeability in the Travis Peak Field exceeded permissible levels. The Commission, while concluding that the new information was not sufficiently "dispositive" to warrant outright reversal of the Texas Railroad Commission's designation, determined that it was nevertheless sufficient to "raise legitimate doubts as to whether Travis Peak qualifies as a tight formation under the applicable standards of the Commission's regulations." 41 FERC at ¶ 61,580–81. In light of these facts, we conclude that the Commission, far from acting arbitrarily and capriciously in this matter, pursued a reasonable and prudent course of action in remanding the tight field designation to the Texas Railroad Commission.

■ The petitioner further contends that the Commission erred in remanding the Travis Peak designation because the Commission's consideration of Delhi's newly submitted evidence was untimely. The petitioner claims that such "hindsight" evidence does not support a remand. We disagree. In *Ecee, Inc. v. FERC,* 645 F.2d 339 (5th Cir.1981), this Court held that the Commission may consider "all relevant evidence" regardless of its age or method of preparation in deciding whether to exercise its section 503 remand authority. *Id.* at 351. Indeed, this Court held that where, as in the instant case, reversal is improper but the evidence in the Commission's files is inconsistent with the determination of a [local] jurisdictional agency, "it would prob-

ably be an abuse of discretion *not* to remand." *Id.* at 351 n. 9 (emphasis supplied).

Last, the petitioner argues that the Commission has "second guessed" the Texas Railroad Commission and "thwarted the will of Congress" by defeating producer expectations of incentive pricing. We are unpersuaded by either of these contentions. First, the Commission has not second guessed the Texas Railroad Commission. To the contrary, the Commission is providing the Texas Railroad Commission with the opportunity to reconsider, in light of the newly discovered evidence, its earlier recommendation to the Commission that the Travis Peak Field be designated as a tight formation. Moreover, the Commission specifically accorded the Texas Railroad Commission the prerogative to decide on remand the proper method of calculating permeability and flow rates.

We likewise find unpersuasive the petitioner's contention that the Commission has ignored a congressional mandate by defeating producers' expectations of incentive pricing in the Travis Peak Field. In that regard, it is axiomatic that the Commission cannot ignore its responsibility under the NGPA to ensure that the "ladies at the burnertip" do not pay artificially inflated prices for gas that might not qualify for incentive prices. *See Perlman v. FERC,* 845 F.2d 529, 532 (5th Cir.1988); *Columbia Gas Development Corp. v. FERC,* 651 F.2d 1146, 1150 (5th Cir.1981). We agree with the Commission in the instant case that it has acted in furtherance of that congressional mandate by remanding to the Texas Railroad Commission a tight formation designation that is inconsistent with information in the Commission's files. Accordingly, we hold that the Commission did not act arbitrarily and capriciously in remanding to the Texas Railroad Commission the determination of the Travis Peak Field as a tight formation.

■  Last we turn to the petitioner's argument that the Commission's order reopening the seventy-five well category determinations in the Travis Peak Formation was unlawful, arbitrary, capricious and an abuse of discretion. Section 503(c)(4) of the NGPA provides that the Commission's NGPA related determinations, including determinations such as the one presented by the instant case, "shall not be subject to judicial review under any Federal or State law except as provided under subsection (b)" of this section. 15 U.S.C. § 3413(c)(4). Subsection (b), in turn, limits judicial review of the Commission's determinations to those cases in which the Commission either reverses the determination of a jurisdictional agency or remands the matter for further consideration. That provision notwithstanding, the petitioner contends that judicial review of the Commission's order reopening the individual well determinations is proper under section 506 of the NGPA. Section 506 is the NGPA provision which addresses, in a general manner, judicial review of the Commission's orders.

In *Mesa Petroleum Co. v. FERC,* 688 F.2d 1014, 1016 (5th Cir.1982), this Court concluded that it is "clear that the drafters of the [NGPA] intended to preclude our review of section 503 orders except in the limited instances prescribed in section 503(b)." Continuing further, the Court noted that "[w]e are invested with appellate jurisdiction of [jurisdictional agency determinations] *only* where the Commission reverse or remands them." *Id.* (emphasis supplied). In light of this authority, we are constrained to conclude that this Court lacks jurisdiction to review the Commission's order reopening the seventy-five Travis Peak individual tight formation well determinations.[10] Accordingly, the petition

---

10. As noted earlier, the Commission reopened the individual tight formation well determinations pursuant to § 503(d)(1)(A) concluding that those determinations were based on an "untrue statement of fact." The "untrue statement of fact" to which the Commission referred was its own earlier designation of the Travis Peak Field as a tight formation. That designation was relied on by the Texas Railroad Commission in making its recommendation that the individual wells in Travis Peak were tight formation wells. We are persuaded that Congress did not intend for the Commission to exercise its § 503(d)(1)(A) "untrue statement of a material fact" reopening authority in such a manner. If such were the case, every local regulatory authority decision with which the Commission disagreed would be automatically reviewable.

88

for review of the reopening order is dismissed.

III.  CONCLUSION

We conclude that the Commission did not act arbitrarily or capriciously in remanding the Travis Peak tight field designation to the Texas Railroad Commission in light of newly submitted evidence inconsistent with a tight field determination.  With respect to the petition for review of the Commission's order reopening the seventy-five Travis Peak individual tight formation well determinations, we conclude that we are without jurisdiction to consider the merits of the petitioner's claims.  Accordingly, the order of the Commission remanding the Travis Peak tight field designation to the Texas Railroad Commission for further consideration in light of the Commission's newly discovered evidence is affirmed. The petition for review of the Commission's order reopening the individual tight formation well determinations in the Travis Peak Field is dismissed for want of jurisdiction.

AFFIRMED IN PART, DISMISSED IN PART.