109 T.C. No. 6

UNITED STATES TAX COURT

NIELSON-TRUE PARTNERSHIP, TRUE OIL COMPANY,
TAX MATTERS PARTNER, Petitioner v. COMMISSIONER
OF INTERNAL REVENUE, Respondent

Docket Nos. 12069-95, 3980-96.          Filed September 9, 1997.

P owned an interest in two wells in the same tight
formation gas field.  The field had been established
under statutory procedures as a tight formation field.
One well had been certified as producing tight
formation gas under the established Federal statutory
procedures, and the other had not.  Congress provided a
tax credit incentive to develop, among other fuels,
tight formation gas.  Sec. 29(c)(2)(A), I.R.C.,
requires that, as a prerequisite to the credit, "the
determination of whether any gas is produced from * * *
a tight formation shall be made in accordance with
section 503 of the Natural Gas Policy Act of 1978
[NGPA]", Pub. L. 95-621, 92 Stat. 3350, 3397, 15 U.S.C.
sec. 3413 (1988).  NGPA sec. 503 was also the
procedural route to qualifying individual tight
formation gas wells for incentive (higher than ceiling)
price treatment administered by the Federal Energy
Regulatory Commission (FERC).  Under NGPA sec. 503,

related statutes, and FERC regulations, determinations concerning tight formation gas were required for both the field in which a well was situated and the individual well. R determined that sec. 29, through reference to NGPA sec. 503, required individual well-category determinations to qualify for the tax credit. P contends and R does not deny that but for the lack of a certification under NGPA sec. 503, the well in question would meet the qualifications for tight formation gas. P contends that meeting the qualification by definition (in substance) should suffice and that actual certification is unnecessary.

Held: Sec. 29, I.R.C., when read in conjunction with the provisions of NGPA sec. 503 and related materials, requires an individual well tight formation gas determination under the procedures of NGPA sec. 503 as prerequisite to tax credit eligibility.

Douglas A. Pluss and Ronald M. Morris, for petitioner.

Richard D. D'Estrada, for respondent.

GERBER, Judge: Respondent mailed to True Oil Co. (petitioner), as tax matters partner, notices of final partnership administrative adjustment with respect to Nielson-True Partnership for the taxable years 1991 and 1992. The sole adjustment and issue concerns respondent's disallowance of section 29[1] credits in the amounts of $10,170 and $4,394 for 1991 and 1992, respectively.[2]

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable years at issue, and Rule references are to this Court's Rules of Practice and Procedure.

[2] These cases were consolidated for purposes of trial, briefing, and opinion.

FINDINGS OF FACT[3]

On October 14, 1983, True Oil Co., the tax matters partner, and Nielson Enterprises, Inc., a Delaware corporation, formed the Nielson-True partnership. The partnership's principal place of business was Casper, Wyoming, at the time the petition was filed. The primary objective of the partnership was to drill two wells in the "J" Sand formation in the Wattenberg Field in northern Colorado, a gas field covering parts of several counties, including Weld County, Colorado. Wells were drilled in Weld County, known as the Alvin Vonasek "B" well (the Vonasek well) and the Castor Hanson True well (the Hanson well). These wells draw from the "J" Sand formation and produce only gas.

The Federal Energy Regulatory Commission (FERC or the Commission) made an administrative determination that the "J" Sand formation in the Wattenberg Field was a tight formation and that the gas produced from that formation was tight formation natural gas.[4] The Commission's determination was pursuant to the

---

[3] The parties' stipulated facts and exhibits are incorporated by this reference.

[4] A "tight formation" is a sedimentary layer of rock cemented together in a manner that greatly hinders the flow of any gas through the rock. Because such a formation is characterized by low permeability, wells drilled into gas-bearing formations of this kind usually produce at very low rates. To stimulate production from these formations, producers must use expensive enhanced recovery techniques. [Citation omitted.]

(continued...)

Natural Gas Policy Act of 1978 (NGPA), Pub. L. 95-621, sec. 503, 92 Stat. 3350, 3397, 15 U.S.C. sec. 3413 (1988).

An unrelated corporation responsible for operating the wells in the Wattenberg Field submitted a well-category determination application to the local regulatory authority in Colorado for the Vonasek well. In response, the State agency determined that the Vonasek well was producing gas from a tight formation. This determination became final and was not overturned or reversed by FERC. The Vonasek and Hanson wells were part of a group of over 300 wells managed by the same operator. The individual wells in the group were routinely submitted for a well determination by the operator. Due to an oversight, no well-category determination application was filed with the Colorado local regulatory authority with respect to the Hanson well.

During 1991 and 1992, the partnership had a working interest in the Vonasek and Hanson wells. Respondent allowed the nonconventional fuels tax credits under section 29 for the Vonasek well for 1991 and 1992. However, for the same tax years, respondent disallowed the claimed tax credits for the Hanson well

---

[4](...continued)
Williams Natural Gas Co. v. FERC, 872 F.2d 438, 441 n.1 (D.C. Cir. 1989) (quoting Order No. 99, Regulations Covering High-Cost Natural Gas Produced From Tight Formations, 45 Fed. Reg. 56,034 (Apr. 22, 1980)); see also Midwest Gas Users Association v. FERC, 833 F.2d 341, 345 (D.C. Cir. 1987); Pennzoil Co. v. FERC, 671 F.2d 119, 120 (5th Cir. 1982).

on the grounds that no submission for a determination was made for the Hanson well.

OPINION

This is a case of first impression stemming from respondent's disallowance of a section 29 nonconventional fuels tax credit (credit). The issue we consider is whether the Hanson well qualifies for the credit even though it was not certified under the procedures contained in NGPA sec. 503. The parties approach the solution to this issue from different perspectives. Respondent contends that the statutes involved expressly and unambiguously require that a well-category determination must be obtained from the specified authorities for entitlement to the credit. Petitioner, contending that the statute is ambiguous, construes the statute, when read in conjunction with the legislative history and other indicators of congressional intent, as permitting the credit without a formal procedural determination if the well otherwise meets the definitional requirements under the referenced statutory framework.

Section 29, formerly section 44D,[5] was enacted by the Crude Oil Windfall Profit Tax Act of 1980 (COWPTA), Pub. L. 96-223, sec. 231, 94 Stat. 229, 268. This section was entitled "Credit

---

[5] Congress enacted sec. 44D in 1980. See Crude Oil Windfall Profit Tax Act of 1980, Pub. L. 96-223, sec. 231(a), 94 Stat. 268. In the Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 471(c)(1), 98 Stat. 826, Congress redesignated sec. 44D as sec. 29.

For Producing Fuel From A Nonconventional Source", and it was intended to encourage the development of alternative energy sources and to provide producers of alternative fuels with protection against significant decreases in the average wellhead price for uncontrolled domestic oil.  See S. Rept. 96-394, at 87 (1979), 1980-3 C.B. 131, 205; H. Conf. Rept. 96-817, at 139 (1980), 1980-3 C.B. 245, 299; see also Texaco Inc. v. Commissioner, 101 T.C. 571, 574-575 (1993).

Section 29(a) provides for a tax credit for qualified fuels produced by a taxpayer and sold to an unrelated person.  Section 29(c)(1)(B)(i) lists gas produced from a tight formation as one of the qualified fuels.  Section 29(c)(2)(A), in pertinent part, states that "the determination of whether any gas is produced from * * * a tight formation shall be made in accordance with section 503 of the * * * [NGPA]."

The parties differ in their interpretations of the term "determination".  Respondent contends that, as a prerequisite to obtaining the credit, a tight formation well-category determination must be obtained by compliance with the application and approval procedures of NGPA section 503.  Respondent concedes that the local regulatory authority and the Commission provided determinations that the Wattenberg Field "J" Sand formation contained tight formation gas.  Respondent also concedes that the Hanson well was drilled in the Wattenberg Field "J" Sand formation and produced gas that would meet FERC's standards as

tight formation gas. Respondent's position relies solely on the absence of a well-category determination under NGPA section 503 for the Hanson well.

Petitioner proposes several arguments, the main thrust of which is that the use of the term "determination" in the statute does not result in the requirement of a well-category determination from FERC or under NGPA section 503. Petitioner contends that the NGPA section 503 reference in section 29 provides a means to a substantive definition for tight formation gas and was not intended to require an actual certification under the NGPA. We agree with respondent.

Section 29 does not literally support the result petitioner seeks. The use of the term "determination" and the reference in section 29(c)(2) to NGPA section 503 would require a reading of both sections to fully understand the requirements and meaning of section 29. In construing a statute, courts seek the plain and literal meaning of the language. United States v. Locke, 471 U.S. 84, 95-96 (1985); United States v. American Trucking Associations, Inc., 310 U.S. 534, 543 (1940). In that regard, words in revenue acts are generally interpreted in their "ordinary, everyday senses". Commissioner v. Soliman, 506 U.S. 168, 174 (1993) (quoting Malat v. Riddell, 383 U.S. 569, 571 (1966) (quoting Crane v. Commissioner, 331 U.S. 1, 6 (1947))).

On the other hand, words with a recognized legal or judicially settled meaning are generally presumed to have been so

utilized, unless such an interpretation will lead to absurd results.  See <u>United States v. Locke</u>, <u>supra</u> at 93, 95-96; <u>United States v. Merriam</u>, 263 U.S. 179, 187 (1923); <u>Lenz v. Commissioner</u>, 101 T.C. 260, 265 (1993) (citing <u>United States v. American Trucking Associations, Inc.</u>, <u>supra</u> at 542-543).

Our principal objective in interpreting any statute is to determine Congress' intent in using the statutory language being construed.  <u>United States v. American Trucking Associations, Inc.</u>, <u>supra</u> at 542; <u>Helvering v. Stockholms Enskilda Bank</u>, 293 U.S. 84, 93-94 (1934); <u>General Signal Corp. v. Commissioner</u>, 103 T.C. 216, 240 (1994).  In order to interpret Congress' intent here, we must analyze section 29 and the NGPA section referenced in section 29.

With these general principles in mind, we consider the phrase "the determination of whether any gas is produced from * * * a tight formation shall be made in accordance with section 503 of the Natural Gas Policy Act of 1978."[6]  Section 29 does not

---

[6] This phrase appears in section 29(c) in the following manner:

    SEC. 29(c). Definition of Qualified Fuels.--For purposes of this section--

        (1)  In general.--The term "qualified fuels" means--

            (A)  oil produced from shale and tar sands,

            (B)  gas produced from--

(continued...)

contain a definition of tight formation gas for purposes of the nonconventional fuels tax credit.  Section 29 simply provides that the "determination" of "whether any gas is produced from * * * a tight formation shall be made in accordance with [NGPA] section 503".  By way of contrast, another part of section 29 references NGPA section 2(18), 92 Stat. 3354, 15 U.S.C. sec. 3301 (1988), as providing the definition of the phrase "committed or dedicated to interstate commerce".  See sec. 29(c)(2)(B)(i).

NGPA section 503[7] contains procedures by which particular types of natural gas may qualify for certain price incentives

---

[6](...continued)
            (i)  geopressured brine, Devonian shale, coal seams, or a tight formation, or

            (ii)  biomass, and

    (C) liquid, gaseous, or solid synthetic fuels produced from coal (including lignite), including such fuels when used as feedstocks.

    (2)  Gas from geopressured brine, etc.--

    (A)  In general.--Except as provided in subparagraph (B), the <u>determination</u> of whether any gas is produced from geopressured brine, Devonian shale, coal seams, or a tight formation <u>shall be made in accordance with section 503 of the Natural Gas Policy Act of 1978.</u>    [Emphasis added.]


[7] We note that the Natural Gas Wellhead Decontrol Act of 1989 (Decontrol Act), Pub. L. 101-60, sec. 3(b)(5), 103 Stat. 157, 159, eliminated wellhead and nonprice controls on the first sale of natural gas.  Sec. (3)(b)(5) of the Decontrol Act repealed the Natural Gas Policy Act of 1978 (NGPA), Pub. L. 95-621, sec. 503, 92 Stat. 3350, 3397, 15 U.S.C. sec. 3413 (1988), effective Jan. 1, 1993.

regulated by FERC.  NGPA section 503, however, does not contain a specific reference to or definition of "tight formation gas".  NGPA section 503 does contain reference to several categories of natural gas which are covered under its procedures, including "high-cost natural gas".  See 15 U.S.C. sec. 3413(a)(1)(D).

NGPA section 503 was enacted in 1978 and did not specifically mention tight formation gas.  The introduction of tight formation gas to the price incentive provisions, including NGPA section 503, did not occur until some later time.  The introduction of tight formation gas into this scenario occurred as described in Williams Natural Gas Co. v. FERC, 872 F.2d 438, 441 (D.C. Cir. 1989), as follows:

> NGPA section 107(c)(5) gives the * * * [FERC] the power to prescribe an incentive price for high-cost natural gas which does not fit within the categories enumerated in section 107(c)(1)-(4).  On July 16, 1979, President Carter recommended the establishment of incentives for the production of "tight formation" natural gas.  After conducting a rulemaking, * * * [FERC] promulgated regulations establishing incentive prices for tight formation gas.  [Fn. ref. omitted.]

The courts thereafter held that NGPA section 503 is the procedural mechanism for the determination of whether a particular well's production qualifies for the price incentive as tight formation gas vis-a-vis the NGPA section 503 category "high-cost natural gas".  See, e.g., Williston Basin Interstate Pipeline Co. v. FERC, 816 F.2d 777, 780 (D.C. Cir. 1987).

NGPA section 503 contains a four-step process by which determinations may be obtained.  First, the local regulatory

authority (local authority) recommended that a field be designated as a tight formation.[8]  Second, FERC could affirm, reverse, remand, issue a preliminary finding, or take no action on the local authority's recommendation.  If no action was taken by FERC, the local authority's recommendation became final 45 days after receipt of the recommendation by FERC.  If FERC issued preliminary findings but failed to take further action, the local authority's recommendation became final 120 days after the date FERC's preliminary finding was issued.  The third procedural step permitted an interested producer to petition the local authority for its recommendation that a particular well within the designated tight formation field should be classified as a tight formation well.  Fourth, FERC could affirm, reverse, remand, issue a preliminary finding, or take no action on the local authority's recommendation with respect to a specific well.  As in step 2, the local authority's individual tight formation well recommendation became final 45 days from the date FERC received the recommendation unless FERC issued a preliminary finding.  In the event that FERC issued a preliminary finding, FERC had 120 days from the preliminary finding to take further action or the

---

[8] NGPA sec. 503, 15 U.S.C. sec. 3413(c)(1), defines the local regulatory authority as the "Federal or State agency having regulatory jurisdiction with respect to the production of natural gas."

local authority's recommendation became final.[9]  Finally, judicial review was available under NGPA section 503, but only in the event that FERC remanded or reversed the local authority's recommendation.  15 U.S.C. sec. 3413(b)(4).

For purposes of obtaining the gas price incentives, the four-step process outlined above is mandatory and not severable or elective.  A well owner may not qualify merely by producing from a well located in a field that has been determined to be a tight formation.  In addition to a field determination, the well owner must obtain a determination that each well produces tight formation gas.  See, e.g., Enserch Exploration, Inc. v. FERC, 887 F.2d 81, 82 (5th Cir. 1989); FERC Order No. 479, issued July 29, 1987, 52 Fed. Reg. 29003 (Aug. 5, 1987).

Regulations under the NGPA indicate that the Wattenberg "J" Sand formation had been finally determined to contain tight formation gas.  See 18 C.F.R. sec. 271.703(d)(11) (1988).  The Wattenberg "J" field is located north and east of Denver and underlies approximately 703,000 acres situated within four different counties.  See 18 C.F.R. sec. 271.703(d)(11)(i).  Accordingly, it is a relatively large area within which many wells may be situated.  The parties do not dispute and the case law supports the principle that to be entitled to the price

---

[9] See Ecee, Inc. v. FERC, 645 F.2d 339, 345-353 (5th Cir. 1981), for a discussion of the statutory division of responsibilities between the Commission and the local authority.

incentives administered by FERC under NGPA section 107(c)(5), 92 Stat. 3366, 15 U.S.C. sec. 3317 (1988), a well owner would be required to obtain a determination, under the NGPA section 503 procedures with respect to each individual well, that it produced "tight formation gas".  The question is whether that same requirement ensues for the tax credit from the section 29 reference to a determination under NGPA section 503.

Petitioner argues that the statutory ambiguity permits its use of the legislative history and other pertinent material to interpret the intent of the statute.  Although we agree that in this instance we must look beyond the statutory language, it is difficult to reach the conclusion proposed by petitioner, considering the statutory language and case precedent concerning NGPA section 503.  For example, could Congress, by incorporating the reference to NGPA section 503 in section 29, have intended that one procedural standard would be applied to determine whether a well is a tight formation well for price incentives and that a different approach and procedural standard would apply for income tax credits where both programs are to be governed procedurally pursuant to NGPA section 503?  This must be the case for petitioner to prevail.

A statutory term should be given its common and ordinary meaning, unless persuasive evidence or context indicates otherwise.  Commissioner v. Soliman, 506 U.S. at 174; Commissioner v. Brown, 380 U.S. 563, 570-571 (1965).  The word

"determination" has been generally defined to mean the act of settling a dispute, suit, or other question by an authoritative decision, or the ascertainment or establishment of the extent, quality, position, or character of something. Webster's II New Riverside University Dictionary 369 (1984). In the legal sense, a "determination" is a "decision of a court or administrative agency" and, also, a "judgment and decision after weighing [all] the [relevant] facts." Black's Law Dictionary 450 (6th ed. 1990). Consequently, we do not find the term "determination" made in accordance with NGPA section 503 to be ambiguous. Section 29(c)(2) cannot be literally interpreted in a manner other than that it requires a determination under the procedures of NGPA section 503.

Petitioner's contention that a well-category determination is not a prerequisite for eligibility for the tax credit is not a plausible literal interpretation of section 29. That is especially so when NGPA section 503 is considered in tandem with section 29, wherein it is referenced. Certainly, section 29 does not mean that respondent possessed the expertise or statutory authority to make determinations of whether gas was from a tight formation for tax credit purposes.[10] Petitioner's approach does

---

[10] Congress considered granting but did not grant authority to the U.S. Department of the Treasury to make determinations under NGPA sec. 503 in the Tax Simplification Act of 1993. See infra note 12. These determinations by the U.S. Department of the Treasury were to be made consistent with NGPA sec. 503.

not comport with the overall statutory design for obtaining the benefit of the tax credit.

Petitioner relied heavily on the legislative history to present its position. Petitioner contends that the legislative history reveals Congress' intent that section 29 required that a well meet the definition of a tight formation as utilized by FERC in the NGPA section 503 administrative process. Although the legislative history does contain some references to possibilities for employing definitions established by FERC, those references do not provide a basis for holding that the term "determination" should be interpreted differently from its usual and established meaning. Our examination of petitioner's argument leads us to the same conclusion whether or not we consider the statute to be ambiguous. In addition, we may seek out any reliable evidence as to the legislative purpose even where the statute is clear. United States v. American Trucking Associations, Inc., 310 U.S. at 543-544; Centel Communications Co. v. Commissioner, 92 T.C. 612, 628 (1989), affd. 920 F.2d 1335 (7th Cir. 1990).

Congress enacted the NGPA in response to a generally growing demand for natural gas and rising prices for energy in the late seventies and early eighties. Williams Natural Gas Co. v. FERC, 872 F.2d at 440; ANR Pipeline Co. v. FERC, 870 F.2d 717, 719 (D.C. Cir. 1989). Producers of gas from tight formations could qualify for incentive gas prices higher than the ceiling. These incentive prices were valuable when uncontrolled gas prices were

high but did little to encourage development of high-cost tight formation gas when prices were low.  See Texaco Inc. v. Commissioner, 101 T.C. 571 (1993).  Consequently, in enacting the nonconventional energy production tax credit under section 29 (formerly section 44D), Congress provided an additional incentive to compensate for the extra costs and risks of producing high-cost fuel, including tight formation gas.  See S. Rept. 96-394, at 87 (1979), 1980-3 C.B. 131, 205.

Turning to the legislative history, the nonconventional fuels tax credit first appeared in COWPTA.  The conference committee report states:

> For purposes of the credit, the definition of natural gas from geopressured brine, coal seams, and Devonian shale is the same as that determined by the Federal Energy Regulatory Commission (FERC) under the Natural Gas Policy Act of 1978 (NGPA).  Until FERC defines the term "tight formation" under section 107(c)(5) of the NGPA, tight sands gas is defined in terms of average matrix permeability to gas.  [H. Conf. Rept. 96-817, at 138 (1980), 1980-3 C.B. 245, 298.]

In addition, the conference report for the COWPTA stated:

> Conference agreement.--The conference agreement adopts a modified version of the Senate amendment. This provision is intended to provide producers of alternative fuels with protection against significant decreases in the average wellhead price for the uncontrolled domestic oil, with which alternative fuels frequently compete.  * * *
>
> *        *        *        *        *        *        *
>
> Sources eligible for the credit, and the definitions of those sources, generally are the same as those in the Senate amendment.  Natural gas produced from a tight formation, however, has the same

definition as that determined by the FERC under the
NGPA * * *   [Id. at 139-140, 1980-3 C.B. at 299-300.]

Finally, the staff of the Joint Committee's General Explanation

of COWPTA contains the statement that

For purposes of the credit, the definition of
natural gas from geopressured brine, Devonian shale,
coal seams, or a tight formation is that determined by
the Federal Energy Regulatory Commission in accordance
with section 503 of the Natural Gas Policy Act of 1978
(NGPA).  * * *

Staff of Joint Comm. on Taxation, General Explanation of the

Crude Oil Windfall Profit Tax Act of 1980, at 81 (J. Comm. Print

1981).

Accordingly, portions of the legislative history contain the

expectation that FERC would create a definition of tight

formation gas to be utilized for purposes of obtaining the tax

credit.  Petitioner contends that, by use of the term

"determination", Congress intended to incorporate the definition

to be promulgated by FERC, rather than to require a well-category

determination for each specific well under NGPA section 503.  We

could agree that Congress expected that FERC would ultimately

define "tight formation" gas.  But Congress' choice of the term

"determination", rather than "definition", in section 29 leaves

petitioner's contentions without statutory support or substance.

Petitioner also argues that Congress retained the

"determined in accordance with section 503" language of section

29(c)(2)(A) even though the statutory authority under the NGPA to

make determinations under section 503 for most new tight

formation gas was revoked by the Natural Gas Wellhead Decontrol Act of 1989 (Decontrol Act), Pub. L. 101-60, sec. 3(b)(5), 103 Stat. 157, 159, effective January 1, 1993.  In other words, petitioner argues that FERC and the relevant local regulatory agencies did not have the authority to issue well-category determinations after that date.  Petitioner also argues that, as a general matter, the Omnibus Budget Reconciliation Act of 1990, Pub. L. 101-508, sec. 11501, 104 Stat. 1388-479, extended and liberalized the availability of the tax credit for tight formation gas for wells drilled before January 1, 1993.  In that regard, the section 29 credit for tight formation gas is allowable beyond January 1, 1993.

Conversely, respondent points out that FERC announced that it would continue processing well-category determinations until January 1, 1993, in order for producers to qualify for nonconventional fuels tax credits.  FERC Order No. 523, 55 Fed. Reg. 17425 (Apr. 25, 1990).  Respondent also relies on legislative history in connection with the repeal of the incentive-pricing provisions of the NGPA containing the statement that the repeal was not intended to affect the availability of the nonconventional fuels tax credit.  See S. Rept. 101-39, at 9 (1989).  Finally, respondent points out that Congress considered making the nonconventional fuels tax credit permanent but extended for only 2 years the time within which a well had to be drilled to qualify.  This extension was intended to coincide with

the effective date of the repeal of the NGPA, so that the processing of well-category determinations could be continued. Consequently, respondent argues this leads to the conclusion that FERC and other local regulatory agencies were authorized to make well-category determinations.[11]

---

[11] These circumstances were described in Marathon Oil Co. v. FERC, 68 F.3d 1376, 1377-1378 (D.C. Cir. 1995), as follows:

Effective January 1, 1993, the Natural Gas Wellhead Decontrol Act of 1989 repealed NGPA price controls on wellhead sales of natural gas. As a result of the Decontrol Act, the Commission eliminated incentive prices for tight formation gas produced from wells "spudded" * * * or "recompleted" after May 12, 1990. A year later, however, the Omnibus Budget Revenue Reconciliation Act of 1990 instituted a tax credit for natural gas from newly drilled wells in tight formations. In order to be eligible for the tax credit, the natural gas must (1) be produced from a well drilled or a facility placed in service after December 31, 1979 and before January 1, 1993 and (2) be sold before January 1, 2003. The Budget Act further provides that "the determination of whether any gas is produced from * * * a tight formation shall be made in accordance with section 503 * * * [NGPA]." Thereafter, the Commission [FERC] announced its intention to continue to process the initial determinations of agencies despite their loss of regulatory significance, until January 1, 1993. The Commission later extended this deadline to April 30, 1994 so long as the application for an initial determination was filed with the agency by December 31, 1992. However, the Commission said that it "will not accept determinations where the well was spudded or recompletion commenced on or after January 1, 1993." Explaining the reason for continuing to review agency determinations for a transition period, the Commission stated that "while NGPA Section 107 well category determinations have no price consequence, they are necessary to obtain the Section 29 tax credit." [Citations omitted.]

We are persuaded that Congress intended to couple the eligibility for the section 29 credit with the obtaining of well-category determinations under NGPA section 503. In particular, the legislative history of the Decontrol Act indicates that the repeal of FERC's determination review providing for incentive pricing in NGPA section 503 was not intended to affect the availability of the nonconventional fuels tax credit. S. Rept. 101-39, supra at 9.[12]

Equally significant, the aforementioned congressional action illustrates an understanding that section 29 was linked with a procedural determination under NGPA section 503. Petitioner's perspective is that the FERC determination process was left in place to continue the process of defining tight formation gas. Even if that was the basic reason for extension, the section 29 statutory language plainly requires a "determination" under NGPA section 503.

---

[12] See also Staff of Joint Comm. on Taxation, Technical Explanation of the Tax Simplification Act of 1993, at 204 (J. Comm. Print 1993). (The Tax Simplification Act of 1993 was not enacted.) That report contains the statement that

> In order to ensure that qualifying gas production from such wells in fact will receive the credit, it is believed necessary to continue the well and formation determination process for periods after * * * [the Commission] discontinues its role in this process. [Id. at 205; emphasis added.]

Petitioner also relies on Rev. Rul. 93-54, 1993-2 C.B. 3,[13] for the proposition that a well-category determination is not necessary to qualify for the tax credit.  In Rev. Rul. 93-54, supra, the Commissioner held that if a well is drilled after December 31, 1979, and prior to January 1, 1993, but is "recompleted" after January 1, 1993, and if the "recompletion" does not involve additional drilling to deepen or extend the well, the production qualifies for the tax credit.[14]  Rev. Rul. 93-54, supra, however, does not concern the question of whether a determination must be obtained under NGPA section 503 in order to be entitled to the tax credit.  The ruling assumes prior qualification, and under the circumstances described, holds that further qualification is unnecessary.  It should also be noted that petitioner's argument is also undermined by timing, because the Commissioner issued this ruling after the repeal of section 29.  Petitioner references other weaker arguments (analogous and tangential materials) in support of its position that section 29 should not be read as requiring an individual well-category determination by FERC.  Petitioner's arguments individually or

---

[13] It is noted that we treat the Commissioner's rulings as having no more authority than that of the position of a party. See Gordon v. Commissioner, 88 T.C. 630, 635 (1987); Estate of Lang v. Commissioner, 64 T.C. 404, 407 (1975), affd. in part and revd. in part 613 F.2d 770 (9th Cir. 1980).

[14] Petitioner defines "recompletion" by means of the example:  "the well was later completed into a different, shallower reservoir".

collectively are insufficient to overcome the use of the term "determination" and the requirement of a specific well-category determination under NGPA section 503.

Accordingly, we hold that an individual well-category determination must be obtained in order to qualify for the section 29 tax credit attributable to tight formation gas.

To reflect the foregoing,

<u>Decisions will be entered for respondent.</u>