**MARATHON OIL COMPANY, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

Nos. 94–1698, 94–1708.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 6, 1995.

Decided Oct. 27, 1995.

---

Gordon Gooch argued the cause, for petitioners, with whom Robert C. Murray, Alan W. Tomme, Katherine B. Edwards, and Jon L. Brunenkant were on the briefs.

Susan J. Court, Attorney, Federal Energy Regulatory Commission, argued the cause, for respondent, with whom Jerome M. Feit, Solicitor, was on the brief. Edward S. Geldermann and Jill L. Hall, Attorneys, entered appearances.

Before: WALD, SILBERMAN and SENTELLE, Circuit Judges.

SILBERMAN, Circuit Judge:

Marathon and Union Pacific petition for review of FERC's refusal to accept state agencies' determinations that their wells produce tight formation gas. They contend that the Commission's actions have prejudiced their chances of receiving a tax credit for this gas. Petitioners, however, do not show injury-in-fact and therefore lack Article III standing. The petitions for review are denied.

## I.

The Natural Gas Policy Act of 1978, 15 U.S.C. § 3301 *et seq.* (1988) (NGPA), established price ceilings for wellhead sales of natural gas. FERC was given authority under the Act to establish incentive prices (prices higher than the otherwise applicable price ceilings) for natural gas produced under "conditions as the Commission determines to present extraordinary risks or costs." § 107(c)(5). Among the types of natural gas that the Commission concluded qualified for incentive pricing was tight formation gas. Tight formation gas must be removed from a sedimentary layer of rock cemented together in a manner that typically makes gas difficult and expensive to extract.

Section 503 of the NGPA establishes the procedures that govern the determination of whether a particular type of natural gas is tight formation gas. The federal or state agency "having regulatory jurisdiction with respect to the production of natural gas" makes an initial determination. The Commission can then either affirm, reverse, remand, make a preliminary finding on, or simply take no action regarding the agency's determination. If the Commission takes no action within 45 days after receipt of the agency's determination, that determination is final. Judicial review is available under section 503 but only in the event that FERC remands or reverses. § 503(b)(4).

Effective January 1, 1993, the Natural Gas Wellhead Decontrol Act of 1989 repealed NGPA price controls on wellhead sales of natural gas. As a result of the Decontrol Act, the Commission eliminated incentive prices for tight formation gas produced from wells "spudded" (*i.e.,* where surface drilling had commenced) or "recompleted" after May 12, 1990. A year later, however, the Omnibus Budget Revenue Reconciliation Act of 1990 instituted a tax credit for natural gas from newly drilled wells in tight formations. In order to be eligible for the tax credit, the natural gas must (1) be produced from a well drilled or a facility placed in service after December 31, 1979 and before January 1, 1993 and (2) be sold before January 1, 2003. 26 U.S.C. § 29(f). The Budget Act further provides that "the determination of whether any gas is produced from . . . a tight formation shall be made in accordance with section 503 of the Natural Gas Policy Act of 1978." § 29(c)(2)(A). Thereafter, the Commission announced its intention to continue to process the initial determinations of agencies, despite their loss of regulatory significance,

until January 1, 1993. The Commission later extended this deadline to April 30, 1994 so long as the application for an initial determination was filed with the agency by December 31, 1992. *See Order Qualifying Certain Tight Formation Gas for Tax Credits, Order No. 539–C,* 58 Fed.Reg. 38,528, 38,529 (1993). However, the Commission said that it "will not accept determinations where the well was spudded or recompletion commenced on or after January 1, 1993." *Id.* at n. 12. Explaining the reason for continuing to review agency determinations for a transition period, the Commission stated that "while NGPA Section 107 well category determinations have no price consequence, they are necessary to obtain the Section 29 tax credit." *Id.* at 38,528.

In response to requests from state agencies, the Commission defined "recompletion" for purposes of Order No. 539–C. It stated that

> a recompletion occurs when the producer reenters a well to complete (i.e., perforate) a new formation from that in which a well has previously been completed.... In summary, the key factor in establishing whether a completion in a tight sand is a recompletion or an *initial* completion is whether the well must be entered a second time to complete in the target tight sand after the well has already been completed in another formation.

*Railroad Comm'n of Texas,* 66 F.E.R.C. ¶ 61,130, 61,237 (January 28, 1994) (emphasis in original).

On June 20, 1994, FERC refused to accept two state agencies' section 107(c) tight formation designations. The Oklahoma Corporation Commission Oil and Gas Conservation Division had designated gas produced from Marathon's well, including perforations made in the well in 1993, as tight formation gas. FERC declined to accept this designation for the post–1992 perforations, explaining that they were *recompletions* as defined by its January 28, 1994 order. *Oklahoma Corp. Comm'n Oil and Gas Conservation Div.,* Letter Order, (June 20, 1994), *reh'g denied,* 68 F.E.R.C. ¶ 61,323 (1994). Similarly, the Wyoming Oil and Gas Conservation Commission designated gas produced from Union

Pacific's well as tight formation gas. FERC, 70 days after it received this determination, announced it would not accept the section 107(c) designation for gas produced from the perforations in the Frontier formation because they were post–1992 recompletions. *Wyoming Oil and Gas Conservation Comm'n,* Letter Order, (June 20, 1994), *reh'g denied,* 68 F.E.R.C. ¶ 61,315 (1994). Marathon and Union Pacific's requests for rehearing were denied.

## II.

Petitioners present substantial arguments asserting various FERC errors. Union Pacific points out that FERC did not act within 45 days after receipt of the Wyoming Commission's determination, and therefore under FERC's regulations, it appears that the initial determination became final. Marathon argues that FERC misapplied its own definition of recompletion, set forth in its January 28, 1994 order, to the Oklahoma Commission's determination. The order states that the "key factor" in determining whether a perforation is a recompletion is whether the well was "entered a second time ... after the well has already been completed in *another* formation." 66 F.E.R.C. at 61,237 (emphasis added). Yet, all of Marathon's perforations were in the same formation. Whatever the merits of these and petitioners' other arguments, we do not reach them because we conclude that petitioners do not have Article III standing.

Petitioners have not shown an injury that has resulted from FERC's action (or inaction), one of the elements necessary to establish the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Petitioners claim that as a result of FERC's refusal to affirm the state agencies' determinations, they will be unable, or at minimum, it will be significantly more difficult, to receive the section 29 tax credit for tight formation gas. But petitioners are only speculating as to the IRS' position regarding the availability of tax credits. We have not been shown any indication that FERC's position—obviously influenced by the Commission's desire to extri-

cate itself from a task that has no more regulatory significance—will be given any weight by the IRS. It is simply not enough to say, as do petitioners, that there "is no evidence in [the] record that indicates that the IRS does *not* rely on the FERC's disposition" (emphasis added).

To be sure, section 29 requires, in order to be eligible for the tax credit, that the tight formation determination shall be made in "accordance with section 503 of the Natural Gas Policy Act of 1978." And FERC's stated purpose for continuing to process agency determinations beyond the date of regulatory relevance was to aid producers in obtaining tax credits. Still, that FERC arguably has proven to be an unreliable friend ("I am from the government and I am here to help you") may be aggravating, but it does not constitute injury-in-fact. Actually, it does not even appear that FERC's refusals to process the applications were actions taken pursuant to section 503. Section 503(b) states that the "Commission shall reverse any final State or Federal agency determination [applying the definition of Section 107(c) tight formation gas] if it makes a finding that such determination is not supported by substantial evidence in the record upon which such determination was made." § 503(b)(1)(A). The Commission did not reverse either the Oklahoma or the Wyoming agency's determination.[1] The Commission's refusal to accept the agencies' determinations was based on its application of the January 28, 1994 order's definition of "recompletion" which depends on whether the well has been entered a second time after it has been completed in *another* formation, an inquiry that obviously has nothing to do with whether the gas is trapped in a *tight* formation. The Commission, then, did *not* take a position on whether the state agencies correctly determined that petitioners' wells produced tight formation gas.

In any event, whatever word properly characterizes the Commission's treatment of the state determination, we see no reason why the IRS—as did FERC—would necessarily, or even likely, ignore the state substantive decisions. If it can be said that FERC's actions, although not strictly a reversal or remand, were pursuant to section 503, it is by no means obvious that the IRS would see itself bound to take the same position. While the IRS might be required to apply FERC's substantive definition of tight formation gas, it does not seem to us obliged to employ the same eligibility limitations that the Commission has adopted. Indeed, a revenue ruling seems to indicate that the IRS will consider recognizing a tax credit for gas from wells that would no longer be eligible to receive a tight formation gas designation from FERC.[2] It is patently obvious, after all, that FERC's interpretation of "recompletion" is influenced by its desire to extricate itself as soon as possible from a task that has no regulatory purpose. And, since FERC is going out of the business of making section 503 determinations long before the tax credits cease to be available in 2003 (at the earliest), the IRS will inevitably face a period when it will not be able to rely on FERC—even if it wanted to. (FERC obviously changed its mind as to the "necessity" of its role regarding tax credits.) Under these circumstances, the IRS may well simply ignore FERC's determinations during its phase-out period.

We conclude, therefore, that FERC's actions in this case have no necessary legal significance bearing on the IRS' decision whether to grant the tax credit. Petitioners, of course, retain the right to present their arguments in the event they are obliged to challenge an IRS determination predicated on FERC's refusal to accept the Oklahoma and Wyoming Commission determinations.

---

**1.** Nor is there any serious contention that the Commission remanded the state agencies' determinations. A remand occurs when FERC returns a matter to the agency for consideration of information "contained in the public record[] ... and which is not part of the record upon which such determination was made" that the Commission finds inconsistent with the initial determination. § 3413(b)(2).

**2.** Revenue Ruling 93–54 states that fuel will qualify for the section 29 credit if it is qualified fuel under section 29(c) even if the well is recompleted after 1992 so long as the recompletion does not involve additional drilling to deepen or extend the well. 1993–2 C.B. 3 (1993)

For the preceding reasons, Marathon and Union Pacific's petitions for review are denied.