T.C. Memo. 2011-37

UNITED STATES TAX COURT

WILLARD JAMES COLLINS AND BARBARA N. COLLINS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9268-08.                    Filed February 9, 2011.

Willard James Collins and Barbara N. Collins, pro se.

<u>Elke E. Franklin</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, <u>Judge</u>:  Respondent determined deficiencies of $5,863

and $6,341 in petitioners' Federal income taxes for 2004 and

2005, respectively.  After concessions[1] the issues before this

Court are:  (1) Whether petitioners are entitled to their claimed

_____

[1]Petitioners conceded that they received dividend income of
$21 and interest income of $127 in 2005.

tax credit under section 29[2] for the domestic production and sale of fuel derived from nonconventional sources for 2004 and 2005, respectively; (2) whether petitioners can deduct payments of $4,691 and $5,061 made in 2005 and 2006, respectively, as expenses of a trade or business under section 162 or as investment expenses under section 212; and (3) whether petitioners can deduct as theft losses under section 165 for 2004 or 2005 the payments made to Gas Recovery Partners 2GP in 2005 and 2006.

                        FINDINGS OF FACT

     Some of the facts have been stipulated and are so found. Petitioners are husband and wife. They timely filed joint Federal income tax returns for 2004 and 2005. Petitioners resided in Texas at the time they filed the petition.

     For 20 years petitioners used the tax preparation services of Mr. Tax of America, owned by Edward Wayne Adams. Mr. Adams prepared their tax returns for those years, including 2004 and 2005. In March 2005, while preparing petitioners' 2004 tax return, Mr. Adams recommended claiming tax credits for the production and sale of fuel from a nonconventional source (FNS tax credit) to reduce the tax petitioners owed for that year. Mr. Adams provided documents discussing energy credits and Gas

---

[2]All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Recovery Partners 2GP's landfill gas rights and assignments. Yet none of those documents concerned the landfills in which petitioners later invested.

On April 9, 2005, petitioners issued a check for $4,691 to Gas Recovery Partners 2GP, which cashed it on April 18, 2005. Mr. Adams provided the "Support Statement for Section 29 FNS Tax Credits" that stated that Gas Recovery Partners 2GP owned biomass gas wells in Puerto Rico (Puerto Rico wells) and that Mr. Collins was entitled to a section 29 tax credit. The statement identified the Puerto Rico wells' Environmental Protection Agency (EPA) designation as PRD98051213 ERC #QF98-71-RD 874 7.3 Hoyo Mula Wad and calculated the allowable FNS tax credit using Mr. Collins' 0.001794511 share ownership interest in that landfill. Petitioners did not inquire into Gas Recovery Partners 2GP's activities or the purported source of the FNS tax credits. Nor did Mr. Adams and petitioners ascertain whether Gas Recovery Partners 2GP was the owner of the landfill that was supposedly generating the nonconventional fuel. Furthermore, no contract was executed to document the transaction.

Petitioners followed Mr. Adams' advice and claimed the FNS tax credit for 2004. Petitioners timely filed a 2004 joint Federal income tax return indicating that they earned $46,636 of taxable income and owed $6,279 of tax and claiming a $5,863 FNS tax credit and $4,569 of Federal income tax withholding. On the

basis of that information petitioners would receive a refund of $4,153.

For 2005 petitioners again followed Mr. Adams' advice but claimed the FNS tax credit for a landfill in Ohio (Ohio landfill). On April 3, 2006, petitioners issued a check for $5,061 to Gas Recovery Partners 2GP, which cashed it on April 14, 2006. Mr. Adams provided the "Support Statement for Section 45 FNS Tax Credits"[3] that indicated that Gas Recovery Partners 2GP owned the biomass gas wells and that petitioners were entitled to the section 45 tax credit. The statement also identified the EPA designation of the Ohio landfill as Ottawa Co. LF#12693-1189 Port Clinton, Montgomery Co. Again, Mr. Adams did not provide any other information on whether Gas Recovery Partners 2GP owned the Ohio landfill petitioners claimed as the purported source for the production of the qualifying fuel, and petitioners did not inquire into Gas Recovery Partners 2GP's activities or its ownership of the Ohio landfill. Mr. Adams also advised petitioners to file a Schedule C, Profit or Loss From Business, reflecting a profit or loss from a business and indicating that

_____

[3]The Energy Policy Act of 2005, Pub. L. 109-58, sec. 1322, 119 Stat. 1011, redesignated sec. 29 as sec. 45K, effective for fuel produced and sold from nonconventional resources after Dec. 31, 2005. However, sec. 45K or 29 differs from sec. 45, because sec. 45 generally allows a tax credit for electricity generated from certain renewable resources. All supporting documents attached to petitioners' 2005 return cite sec. 45 as the authority for claiming the FNS tax credit for 2005.

they operated an "alternative energy" activity at their home despite the fact that they never engaged in such an activity. Petitioners timely filed their 2005 joint Federal income tax return, stating that they earned $53,142 of taxable income and owed $7,239 of tax and claiming a $6,326 FNS tax credit and $4,171 of Federal income tax withholding. Although petitioners never received any income from the "alternative energy" activity, their Schedule C indicated that from the activity they earned gross income of $1,960 and incurred "other expenses" of $1,901, resulting in net income of $59. Those expenses consisted of a production cost of $1,695, a gas blower expense of $47, an air compressor expense of $35, an office expense of $6, a shop cost of $22, a utilities expense of $73, a testing cost of $19, and a line fee of $4. On the basis of that information, petitioners would receive a refund of $3,258.

By 2007 petitioners became suspicious of Mr. Adams and the venture and terminated their relationship with him. Petitioners did not know that what they had purchased was a sham. By notice dated March 14, 2008, respondent determined deficiencies of $5,863 and $6,341 in petitioners' Federal income taxes for 2004 and 2005, respectively. That notice informed petitioners that their FNS tax credit was disallowed because they had failed to establish their entitlement to the credit.

The Puerto Rico landfill did not produce or sell any qualifying fuels for 2004 and 2005. Also, for 2004 and 2005, neither petitioners nor Gas Recovery Partners 2GP had an ownership interest in the Puerto Rico and Ohio landfills.

## OPINION

Generally, the Commissioner's determination of a Federal tax deficiency is presumed correct, and the taxpayers must bear the burden of proving otherwise. See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933).

## I. Section 29 and 45K Credit

Subject to various limitations, former section 29, redesignated section 45K for years ending after December 31, 2005, provided a credit for producing fuel from a nonconventional source. The credit is based on the fuel produced and attributable to the taxpayer. Because neither petitioners nor the person they dealt with or the partnership they paid had an interest in a fuel-producing source and no fuel was produced, the complexities of the credit provision need not be explored here. See generally S/V Drilling Partners v. Commissioner, 114 T.C. 83 (2000); Nielson-True Pship. v. Commissioner, 109 T.C. 112, affd. sub nom. True Oil Co. v. Commissioner, 170 F.3d 1294 (10th Cir. 1999).

Petitioners stipulated that they did not own the landfills in either Puerto Rico or Ohio and that the Puerto Rico landfill in which they allegedly invested did not produce any alternative fuels.  On the basis of the stipulated facts, petitioners are not entitled to the FNS tax credits under section 29 for 2004 and 2005.

II.  Deductions Under Sections 162 and 212

Section 162 provides for a deduction for all ordinary and necessary expenses paid or incurred during the year in carrying on any trade or business.  Section 212 allows a deduction for all ordinary and necessary expenses incurred during the year for the production or the collection of income.  Although these two sections provide for deductions of ordinary and necessary expenses, they are considered in pari materia, requiring petitioners to engage in those activities with a profit-seeking motive, independent of tax savings.  See Beck v. Commissioner, 85 T.C. 557, 569-570 (1985); sec. 1.183-2(b), Income Tax Regs. Otherwise, any expenses incurred in an activity entered into without a profit-objective would be reviewed under section 183. The profit-objective analysis under section 183 governs particular shelter investments.  See Beck v. Commissioner, supra at 569 n.6; Schwartz v. Commissioner, T.C. Memo. 1991-380.  While a reasonable expectation of profit is not required, petitioners' objective of making a profit must be bona fide.  Fox v.

Commissioner, 80 T.C. 972, 1006 (1983), affd. without published opinion 742 F.2d 1441 (2d Cir. 1984), affd. sub nom. Barnard v. Commissioner, 731 F.2d 230 (4th Cir. 1984), affd. without published opinion sub nom. Hook v. Commissioner, Kratsa v. Commissioner, Leffel v. Commissioner, Rosenblatt v. Commissioner, Zemel v. Commissioner, 734 F.2d 5, 6-7, 9 (3d Cir. 1984). Whether petitioners possessed the requisite profit objective is a question of fact to be resolved on the basis of all the facts and circumstances. See Beck v. Commissioner, supra at 570. Although no one factor is determinative, greater weight must be given to objective facts than to petitioners' mere statement of their intent. See id.

No deduction is here allowable for petitioners' $6,341 payment made in 2006 because that payment was not made during the years at issue. As for the 2005 payment, the Court finds that this payment is not deductible under either section 162 or section 212. The record indicates that petitioners did not engage in the activity for the primary purpose of seeking a business profit. Petitioners had no knowledge regarding the partnership, nor did they attempt to inquire into the fuel production activity or seek expert advice on the production of nonconventional fuel. Petitioners relied on Mr. Adams exclusively for tax advice. Although petitioners claimed expense deductions for operating a Schedule C activity at their home, the

record does not indicate that petitioners actually operated such an activity at their home or received any income from such an activity.  For those reasons, respondent conceded that petitioners are not subject to tax on $59 of income attributed to an "alternative energy" activity reported on Schedule C. Furthermore, petitioners did not assume any risk or incur net expenses as a result of claiming a credit for 2005.  They paid Gas Recovery Partners 2GP less than their claimed FNS tax credit. Petitioners engaged in this activity primarily for tax purposes-- to offset their income.  The 2005 payment is not allowable as a deduction under section 162 or section 212.

III. Loss Deduction Under Section 165

Section 165(a) provides a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise.  Section 165(c) limits the losses to those incurred in a trade or business, those incurred in transactions entered into for profit but not connected with a trade or business, and those losses of property due to fire, storm, shipwreck, or other casualty or from theft.  As discussed above, petitioners did not operate a trade or business or engage in an activity with a profit objective, so petitioners instead seek a deduction under the theft loss provision.  Section 165(e) provides that any loss arising from the theft shall be treated as sustained during the taxable year in which the taxpayer discovers such loss.

Petitioners' losses of the payments made in 2005 and 2006 cannot be deducted as theft losses under section 165(e) for 2004 and 2005, respectively, because there is no evidence that they discovered the losses during 2004 and 2005.

To reflect the foregoing,

Decision will be entered for respondent.