T.C. Memo. 2019-25

UNITED STATES TAX COURT

CHARLES M. STEINER AND RHODA L. STEINER, Petitioners <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14075-16.                    Filed April 2, 2019.

<u>Stephen S. Photopoulos</u>, for petitioners.

<u>Julia L. Wahl</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

RUWE, <u>Judge</u>:  The Commissioner determined deficiencies in petitioners'

Federal income tax and accuracy-related penalties under section 6662(a) as

follows:[1]

---

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

[*2]

| Year | Deficiency | Penalty sec. 6662(a) |
|------|------------|----------------------|
| 2011 | $168,539 | $33,707.80 |
| 2012 | 22,070 | 4,414.00 |

After concessions by respondent,[2] the issue remaining for decision is whether petitioners' yacht charter operation was an activity "not engaged in for profit" within the meaning of section 183 for the years in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

Petitioners are husband and wife, and they resided in Florida when they filed their petition.

Petitioner husband is a highly successful businessman and a certified public accountant. In 1973 he acquired an electrical supply business. He was the chief executive officer, and the business grew to have nearly 1,000 employees and

---

[1](...continued)
Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]At trial respondent conceded that petitioners did not use the yacht for personal purposes during the years in issue and that their claimed deductions are not prohibited under sec. 280A. In his opening brief respondent conceded that petitioners are not liable for the sec. 6662(a) accuracy-related penalty for either year in issue.

**[*3]** several hundred million dollars of revenue. Petitioner husband acquired other companies including a communications company and a telephone recovery company.

Petitioners have been boating since the 1970s and have owned several boats over the years. In 2001 petitioners purchased the Triumphant Lady, a 155-foot motor yacht, for $4,650,000.[3] They used it for diving, and they planned to sail around the world. The Triumphant Lady had a full-time captain and crew. In 2006 petitioners undertook a $10,839,000 refit of the Triumphant Lady that was completed in 2009. In 2008 petitioners hired Captain Bryan Pridgeon to complete the refit and pilot the Triumphant Lady.

Until 2009 petitioners used the Triumphant Lady exclusively for personal purposes. This changed in 2009 after John Weller, a yacht broker, approached them about making the Triumphant Lady available for a specific charter. Petitioners retained International Yacht Collection (IYC) as the exclusive agent to charter the Triumphant Lady and secured a charter through Mr. Weller's contact from May 2-10, 2009.[4]

---

[3]Petitioners owned the Triumphant Lady through Trilady Marine, Ltd., a Cayman Islands company formed by petitioner husband in 2001.

[4]Petitioners conducted the charter activity through CM Charter, LLC.

(continued...)

**[\*4]**　After the charter petitioners continued to use the <u>Triumphant Lady</u> for personal purposes until 2010.  They decided to sell the yacht because of petitioner husband's declining mobility and their financial concerns.  At the same time they held it out for charter.  Petitioners listed the <u>Triumphant Lady</u> for sale with an asking price of $15.95 million, and it sold in January 2012 for $4,455,000.  Petitioners did not expect the yacht to appreciate in value.

Petitioner husband managed the charter activity.  He was aware of the 2008 economic downturn before they listed the yacht for charter, and IYC informed petitioners of the downturn's effect on the charter industry.  Petitioners did not have a formal business plan.  There is no evidence that petitioners consulted charter industry experts about the profit potential other than charter brokerage companies that would earn a commission upon charter.

The <u>Triumphant Lady</u> was listed for charter with two yacht brokers.[5]  Petitioners advertised the <u>Triumphant Lady</u> in yacht magazines and brochures, on television and the internet, and at boat shows.  Between 2010 and 2012 petitioners

---

[4](...continued)
Petitioner husband appears to have been the sole member.

[5]The yacht was listed with IYC from 2009 until August 2010, Allied Charters from August 2010 until March 2011, and then again with IYC from March 2011 until the yacht was sold.

**[*5]** secured only one charter for the <u>Triumphant Lady</u>, a week-long charter for $150,000. The charter activity never produced a profit.

The <u>Triumphant Lady</u> was docked in Fort Lauderdale while it was available for charter.[6] Except for the one charter, the <u>Triumphant Lady</u> rarely left the dock but still maintained a full-time crew to keep the vessel seaworthy. The <u>Triumphant Lady</u> incurred substantial monthly expenses, which are reflected through books and records. These included crew wages of more than $25,000 per month in 2011,[7] a $10,000 per-month docking fee in 2011 and 2012, approximately $1,400 in utilities per month in 2011 and 2012, and monthly management fees to handle payroll and maritime regulatory compliance that ranged from $1,500 to $2,000 per month.

Petitioners maintained a bank account exclusively for the charter activity but paid most of the expenses from personal accounts. Captain Pridgeon and other crew members were authorized to use petitioner husband's personal credit cards for some yacht-related expenses but needed his permission for any charges over

---

[6]Until 2010 the <u>Triumphant Lady</u> was based outside the United States.

[7]The record does not contain clear information about the wage expenses for the crew for 2010 and 2012.

[*6] $1,000. Petitioners paid the credit card bills exclusively from personal bank accounts.

From 2009 until the <u>Triumphant Lady</u> was sold in 2012, Captain Pridgeon handled the day-to-day operations. Petitioner husband and Captain Pridgeon regularly communicated via email, and petitioner husband visited the <u>Triumphant Lady</u> approximately every two to three months.

Petitioners filed joint Federal income tax returns. They reported the income and deductions from the charter activity on their Schedules C, Profit or Loss From Business, and claimed a loss deduction each year. Petitioners made several noteworthy decisions with respect to their returns. For 2010 petitioners claimed only $30 of charter activity deductions. Petitioners did not claim depreciation deductions for the cost of the yacht while it was held out for charter although their accountants determined they were entitled to a $635,363 deduction for 2011.

For 2011 and 2012 petitioners reported the charter activity's gross income before expenses, total expenses, and net losses as follows:

**[*7]**

| Year | Gross income before expenses | Expenses | (Net loss) |
|------|------------------------------|----------|------------|
| 2011 | [1]$51,620 | $757,026 | ($705,406) |
| 2012 | -0- | 122,420 | (122,420) |

[1]Petitioners reported gross receipts of $164,690 and they reported cost of goods sold of $113,070.

Petitioners used these losses to offset significant non-charter-activity income. After accounting for the net losses, petitioners had income of $5,478,220 and $10,946,561 for 2011 and 2012, respectively.

On March 24, 2016, the Commissioner issued petitioners a notice of deficiency, in which he determined that the charter activity was not operated for profit. For 2011 the Commissioner disallowed most of the net loss deduction but allowed a deduction to the extent of the $164,690 derived from the charter activity. For 2012 he disallowed the entire net loss deduction. Petitioners timely filed a petition with this Court.

## OPINION

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer bears the burden of proving that they are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The

[*8] evidence does not establish that the burden of proof shifts to respondent under section 7491(a) as to any issue of fact.

A taxpayer may not fully deduct expenses regarding an activity under section 162 or 212 if the activity is not engaged in for profit. Sec. 183(a), (c); see also Keanini v. Commissioner, 94 T.C. 41, 45 (1990). Pursuant to section 183(a), if an activity is not engaged in for profit, no deduction attributable to that activity is allowed except to the extent provided by section 183(b). In relevant part, section 183(b) allows deductions that would have been allowable had the activity been engaged in for profit but only to the extent of gross income derived from the activity (reduced by deductions attributable to the activity that are allowable without regard to whether the activity was engaged in for profit). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

Deductions are allowed under section 162 for the ordinary and necessary expenses of carrying on an activity which constitutes the taxpayer's trade or business. Deductions are allowed under section 212 for expenses paid or incurred in connection with an activity engaged in for the production or collection of income or for the management, conservation, or maintenance of property held for

**[*9]** the production of income. With respect to either section, the taxpayer must demonstrate a profit objective for the activities in order to deduct associated expenses. Jasionowski v. Commissioner, 66 T.C. 312, 320-322 (1976); Collins v. Commissioner, T.C. Memo. 2011-37, 2011 Tax Ct. Memo LEXIS 31, at *7-*8; sec. 1.183-2(a), Income Tax Regs. The profit standard applicable to section 212 is the same as that used in section 162. See Antonides v. Commissioner, 893 F.2d 656, 659 (4th Cir. 1990), aff'g 91 T.C. 686 (1988); Allen v. Commissioner, 72 T.C. 28, 33 (1979). The Supreme Court has held that for deductions to be allowable under section 162, the "primary purpose" for engaging in the activity must be for profit. Antonides v. Commissioner, 893 F.2d at 659 (citing Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987)); see also Filios v. Commissioner, 224 F.3d 16, 21 (1st Cir. 2000), aff'g T.C. Memo. 1999-92; Westbrook v. Commissioner, 68 F.3d 868, 875 (5th Cir. 1995), aff'g T.C. Memo. 1993-634.

Whether the required profit objective exists is to be determined on the basis of all the facts and circumstances of each case. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), aff'd without published opinion, 647 F.2d 170 (9th Cir. 1981); Embroidery Express, LLC v. Commissioner, T.C. Memo. 2016-136, at *28; sec. 1.183-2(a), Income Tax Regs. We give greater weight to objective facts than to

[*10] the taxpayer's statement of intent. See sec. 1.183-2(a), Income Tax Regs.; see also Keating v. Commissioner, 544 F.3d 900, 904 (8th Cir. 2008), aff'g T.C. Memo. 2007-309. Evidence from years before the years in issue is relevant to the extent it creates inferences regarding the taxpayer's requisite profit objective in later years. See sec. 6214(b); Pouemi v. Commissioner, T.C. Memo. 2015-161, at *4 n.3, aff'd, 633 F. App'x 186 (4th Cir 2016).

Section 1.183-2(b), Income Tax Regs., provides a nonexhaustive list of nine factors used to determine whether an activity is engaged in for profit: (1) whether the taxpayer carries on the activity in a businesslike manner; (2) the expertise of the taxpayer or his or her advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the taxpayer's financial status; and (9) elements of personal pleasure or recreation. All facts and circumstances are to be taken into account, and no single factor is determinative. Id.; see also Keating v. Commissioner, 544 F.3d at 904. We will consider each of these factors in turn.

**[*11]** 1. Businesslike Manner

The regulations provide that carrying on an activity in a businesslike manner may indicate a profit objective. Sec. 1.183-2(b)(1), Income Tax Regs. The regulations explain that businesslike operations typically involve the maintenance of complete and accurate books and records, the conduct of the activity in a manner similar to that of a profitable enterprise, and changes to improve operations and profitability. Id. Our caselaw has also looked to factors such as preparation of a business plan, a consistent and concentrated advertising program, and commingling of personal and business funds. Hylton v. Commissioner, T.C. Memo. 2016-234, at *23, aff'd, 721 F. App'x 300 (4th Cir. 2018); Dodds v. Commissioner, T.C. Memo. 2013-76, at *13, *15.

Some aspects of the charter activity display a businesslike manner, such as maintenance of books and records and use of a payroll provider. However, these businesslike traits are not enough to overcome the shortcomings. Petitioners did not have a formal business plan. Instead, they seem to have entered the charter activity because of the ease of obtaining their first charter in 2009. Although petitioners had a business bank account for the charter activity, they paid most of the expenses from personal accounts. Finally, petitioners' tax reporting was not businesslike. Petitioners dispute this. They contend that they did not deduct

[*12] $635,363 of depreciation for 2011 that their accountants advised they were entitled to because there would be recapture upon sale. However, for 2010 petitioners deducted only $30 of charter-related expenses although the activity incurred significant expenses. This factor favors respondent.

## 2. Expertise of Taxpayer or Advisers

A taxpayer's own expertise, research, and study of an activity, and consultation with experts may indicate a profit motive. Sec. 1.183-2(b)(2), Income Tax Regs. However, the taxpayer's reliance on the advice of an interested party may be unreasonable. Magassy v. Commissioner, T.C. Memo. 2004-4, 2004 Tax Ct. Memo LEXIS 2, at *26, aff'd, 140 F. App'x 450 (4th Cir. 2005); see Johnson v. Commissioner, T.C. Memo. 1992-358, 1992 Tax Ct. Memo LEXIS 377, at *14.

While petitioner husband owned a yacht, he did not have expertise in the charter business. His research appears to have mainly involved consulting with charter companies. These companies potentially stood to profit if petitioner entered the charter business, and therefore his reliance was unreasonable. This factor favors respondent.

## 3. Time and Effort

A taxpayer's contribution of significant time and effort may indicate a profit motive. Sec. 1.183-2(b)(3), Income Tax Regs. However, "[t]he fact that the

**[*13]** taxpayer devotes a limited amount of time to an activity does not necessarily indicate a lack of profit motive where the taxpayer employs competent and qualified persons to carry on such activity." Id.

It is unclear precisely how much time petitioner husband devoted to the charter activity, but he regularly communicated about it with Captain Pridgeon. He employed Captain Pridgeon, a competent and qualified captain, to handle the day-to-day operations. But these operations were also necessary to maintain the yacht for sale. This factor is neutral.

4. Expectation of Asset Appreciation

Petitioners did not expect the Triumphant Lady to appreciate in value. This factor favors respondent.

5. Success in Similar or Dissimilar Activities

Although an activity is unprofitable, the fact that the taxpayer has previously engaged in similar or dissimilar activities and converted them from unprofitable to profitable may indicate that the current activity is conducted for profit. Sec. 1.183-2(b)(5), Income Tax Regs.

Petitioners contend that petitioner husband's successful business career indicates a profit motive. We disagree. Our caselaw has held that a taxpayer's past success is not indicative of a profit motive when he does not use his business

- 14 -

**[*14]** expertise in an activity. <u>Giles v. Commissioner</u>, T.C. Memo. 2005-28, 2005 Tax Ct. Memo LEXIS 29, at *53; <u>Dodge v. Commissioner</u>, T.C. Memo. 1998-89, 1998 Tax Ct. Memo LEXIS 89, at *18, <u>aff'd without published opinion</u>, 188 F.3d 507 (6th Cir. 1999). Besides delegating tasks to Captain Pridgeon, petitioners have not shown that petitioner husband used any of his previously acquired business expertise in the charter operation. This is bolstered by petitioner husband's failure to conduct the charter activity in a businesslike manner.

6. <u>History of Income/Losses and Amount of Occasional Profits</u>

The charter activity was unprofitable each year of its operation. Petitioners attribute this to the 2008 economic downturn. But petitioners were aware of the market conditions when they entered the charter activity, and they were informed of the effect this had on the charter industry. Therefore, this factor favors respondent.

7. <u>Financial Status of the Taxpayer</u>

Substantial income from sources other than the activity (particularly if the losses from the activity generate substantial tax benefits) may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. During the years in issue petitioners had significant income. Petitioners claimed sizable

**[*15]** tax benefits from the losses generated by the charter activity. This factor favors respondent.

8. Personal Pleasure or Recreation

Although petitioners enjoyed boating for a significant number of years, there is no indication that they derived recreation or pleasure from the charter activity. This factor favors petitioners.

Only one of the above factors points in petitioners' favor. The weight of the evidence does not show that petitioners operated the charter activity with a profit objective within the meaning of section 183(c). Rather, it appears that petitioners' primary objective was to partially offset the significant fixed costs of maintaining the yacht so that it could be sold after they stopped using it for personal purposes. And petitioners' objective was to offset their significant income with these fixed costs.

In reaching our decision, we have considered all arguments made by the parties, and to the extent not mentioned or addressed, they are irrelevant or without merit.

[*16] To reflect the foregoing,

Decision will be entered for

respondent as to the deficiencies and for

petitioners as to the accuracy-related

penalties under section 6662(a).